
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BRYCE EVERETT PETERSON, | CV 17–19–M–DLC–KLD |
| Petitioner, | |
| vs. | ORDER |
| JIM SALMONSEN; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

On June 27, 2019 United States Magistrate Judge Jeremiah C. Lynch entered his Findings and Recommendation recommending that Peterson's petition for writ of habeas corpus under 28 U.S.C. § 2254 be denied. (Doc. 35.) Both the State and Peterson have filed objections. (Docs. 42; 47.) The Court will review de novo those findings and recommendations to which the parties specifically object. 28 U.S.C. § 636(b)(1)(C). This Court reviews for clear error those findings to which no party objects. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted). Because the parties are familiar with the facts, they will not be restated here. For

1

the reasons explained below, the Court will adopt the recommendation to deny Peterson's petition.

## Discussion

In his Findings and Recommendation, Judge Lynch acknowledged that portions of Peterson's federal habeas petition may be untimely or procedurally defaulted. (Doc. 35 at 15.) However, Judge Lynch elected not to address those issues under the Ninth Circuit's exception to the procedural bar rule. *Ayala v. Chappell*, 829 F.3d 1081, 1096 (9th Cir. 2016); *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002). That is, where a court determines that a procedural issue is complex or thorny and the merits of a habeas petition are "clearly not meritorious," a court may decline the petition on the merits without addressing the procedural bar. *Franklin*, 290 F.3d at 1232. Turning to the merits, Judge Lynch determined that although "[m]any of Peterson's assertions appear significant" his petition fails because he cannot show prejudice regarding his *Napue*, *Brady*, or ineffective assistance of counsel claims. (Doc. 35 at 20–27.) Additionally, Judge Lynch determined that Peterson's remaining claims lacked merit. (Doc. 35 at 27–35.)

On August 14, 2019 the State filed its objection to the Findings and Recommendation. (Doc. 42.) Though the State agreed that Peterson's petition lacked merit, it believed that Judge Lynch erred in failing to address whether

Peterson's petition is barred by the Antiterrorism and Effective Death Penalty Act's (AEDPA) one-year statute of limitations. (Doc. 42 at 5.) Peterson responded, asserting that his petition was timely, and, in the alternative, that he was entitled to equitable tolling. (Doc. 46.) After several extensions of time, Peterson then filed his own objections to the Findings and Recommendation addressing perceived deficiencies in Judge Lynch's analysis of the merits. (Doc. 47.) The State did not respond to Peterson's objections.

Because the State specifically objects to Judge Lynch's review of the merits as permitted under *Ayala v. Chappell*, and because, in doing so, the issue is now fully briefed, the Court will address that issue de novo. Because the Court ultimately concludes that Peterson's claim is time barred, it renders the bulk of Peterson's merits objections moot.

### I. Timeliness

AEDPA imposes a one-year statute of limitations for filing a federal habeas petition. 28 U.S.C. § 2244(d)(1). This one-year period begins to run after the date the habeas petitioner's state conviction becomes final. *Carey v. Saffold*, 536 U.S. 214, 216 (2002). A conviction is final either "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1). For petitioners who do not seek direct review or are barred from seeking direct review from the state's highest

3

court, their conviction is final at the "expiration of the time for seeking such review." *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). The one-year limitations period is tolled during the time "which a properly filed application for State post-conviction or other collateral review" is "pending" in front of a state court. 28 U.S.C. § 2244(d)(2). As determined by the Montana Supreme Court, Peterson's conviction became final on November 5, 2010. (Doc. 26-85 at 6.)

On the eve of trial, Peterson entered *Alford* pleas to the state charges against him. (Doc. 26-7.) As explained more fully in the Findings and Recommendation, Peterson now claims that these pleas were involuntary and coerced as a result of prosecutorial misconduct and erroneous pretrial rulings. (Doc. 35 at 2–15.) Nevertheless, the state district court accepted Peterson's pleas and entered judgment on November 23, 2009. (Doc. 26-20.) Under the Montana Rules of Appellate Procedure, Peterson had 60 days from entry of judgment to file a direct appeal. M. R. App. P. 4(5)(b)(i). On the 60th day, which was January 22, 2010, Peterson filed an appeal but later moved to voluntarily dismiss it. (Docs. 26-21; 26-22.) His intent in doing so was to ask the state district court to withdraw his pleas and proceed to trial. On November 5, 2010, the Montana Supreme Court granted Peterson's motion to dismiss his appeal. (Doc. 26-23.)

The effect of this decision was significant. By voluntarily seeking to withdraw his plea having used up his full 60 days with which to file an appeal,

Peterson effectively placed all of his eggs in the state district court's basket. (Doc. 26-85 at 5–6.) When the Montana Supreme Court granted Peterson's motion on November 5, 2010 his conviction became final because he had no further right of appeal to the Montana Supreme Court—he had used up all of his time. And because he voluntarily dismissed his appeal, he had nothing left to appeal to the United States Supreme Court, in the event he had wanted to. Therefore, the Montana Supreme Court's November 5th decision signified the "expiration of the time for seeking such review," under 28 U.S.C. § 2244(d)(1) making his conviction final. This is when the federal one-year clock on Peterson's habeas claim began to tick.

Seventeen days later, Peterson filed a motion to withdraw his *Alford* pleas in the state district court. (Doc. 26-24.) The Montana Supreme Court determined that this motion was a postconviction petition. (Doc. 26-85 at 4–6.) This postconviction petition was "properly filed" and, as such, tolled the one-year federal filing deadline. After a hearing, the state district court denied his motion. (Doc. 26-27.) Peterson appealed to the Montana Supreme Court and on November 5, 2013, the Court affirmed the state district court's decision to deny Peterson's motion, although the Court remanded to the district court for the sole purpose of determining the amount of restitution. (Doc. 26-33.) Peterson then petitioned for rehearing and on December 18, 2013, the Court denied his request. (Doc. 26-36.)

Because this denial completed Peterson's first state collateral review process, the one-year clock on Peterson's federal habeas claims began again. In light of the fact that 17 days had elapsed prior to Peterson filing his motion to withdraw his *Alford* pleas, Peterson had 348 days from the Montana Supreme Court's December 18, 2013 petition, meaning he had until December 1, 2014 to file in federal court. Peterson filed his federal habeas claim on February 17, 2017.[1]

Peterson argues that his conviction did not become final until on or after December 28, 2014, which is when the state district court reduced the restitution amount. Peterson believes that decision resulted in a "new judgment" which reset the clock for filing his federal claims. Peterson's argument would carry the day if an amended restitution award was a "new judgment." *See Gonzalez v. Sherman*, 873 F.3d 763, 768 (9th Cir. 2017) (citing *Wentzell v. Neven*, 674 F.3d 1124, 1126–28 (9th Cir. 2012)). A "new judgment" correcting an error in a in a previously entered judgment of conviction necessarily renders the prior judgment not "final" for statute of limitations purposes. *See Lawrence v. Lizzaraga*, No. 216CV0792GEBACP, 2017 WL 495774, at *2 n.5 (E.D. Cal. Feb. 7, 2017).

---

[1] Peterson did file a state postconviction petition on December 17, 2014. This occurred after his federal claim expired. Even if this were not the case, his second state postconviction petition would not have tolled the clock on his federal petition because it was not a "properly filed application for state post-conviction review." 28 U.S.C. § 2244(d)(2); *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). The Montana Supreme Court determined that Peterson's petition was not timely under state proceedings and so failed to consider it. (Doc. 26-85.) A federal court considering whether a petition was "properly filed" is bound by the state court's conclusion. *Allen v. Siebert*, 552 U.S. 3, 7 (2007).

However, consistent with the several district courts that have addressed this issue, an amendment or reduction to a restitution amount is not a "new judgment of conviction" because it does not alter or amend the custodial term. *Id.*; *Pease v. Beach*, 2011 WL 6001865, at *3–4, (D. Alaska 2011); *Carrillo v. Zupan*, 2015 WL 3929650, at *2 (D. Colo. 2015).

Peterson next argues that this Court may determine that his federal petition is timely if it concludes that the Montana Supreme Court's conclusion that his December 7, 2014 postconviction challenge (the second petition) was not timely was "subterfuge" in order to avoid addressing Peterson's federal constitutional claims. Peterson argues that "[o]n rare occasions federal courts have re-examined a state court interpretation of state law when it appears an obvious subterfuge," and the Court should do so now. (Doc. 46 at 13 (citing *Radio Station WOW v. Johnson*, 326 U.S. 120, 129 (1945)).) As already explained, Peterson's second petition on December 17, 2014 was filed after his federal habeas claim had already expired. Even assuming that the Montana Supreme Court's procedural denial of Peterson's claim was an "obvious subterfuge to evade consideration of a federal issue," Peterson's assertion is irrelevant to the issue of statutory tolling. A state habeas petition filed after AEDPA's one-year statute of limitations has no tolling effect. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).

7

## II. Equitable Tolling

Peterson also argues that he is entitled to equitable tolling. Equitable tolling relieves a petitioner of AEDPA's statute of limitations if the petitioner shows: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting Pace, 544 U.S. at 418). An "extraordinary circumstance" requires an external force beyond the petitioner's control. *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland*, 560 U.S. at 653 (internal citations and additional quotation marks omitted).

Peterson argues that the "extraordinary" circumstance that entitles him to equitable tolling was the Montana Supreme Court's "surprise" decision that his second petition was untimely. (Doc. 46 at 15–16.) It is true that the state district court concluded that Peterson's petition was timely under state law and the Montana Supreme Court reversed that decision. (Docs. 26-68; 26-85.) However, Peterson cannot show that he is entitled to equitable tolling as a result of the state court's erroneous assurances that his petition was timely because he cannot show that his federal claim was harmed by this assurance. As already explained, Peterson's federal petition expired on December 1, 2014, prior to when he filed his

second state petition. Had the state district court informed Peterson on December 3, 2015 when it issued its decision that his petition was not timely, and had Peterson immediately filed his federal habeas petition at that time, it would not have changed the outcome: Peterson's petition was time-barred as of December 1, 2014. Therefore, Peterson cannot show an "extraordinary circumstance" that stood as an impediment to timely filing his federal claim.

### III. Peterson's objections

In his objections, Peterson asserts that Judge Lynch erred because he did not give Peterson's arguments the liberal reading to which he was entitled as a pro se litigant. (Doc. 47 at 2–4.) Peterson argues that the Magistrate Judge generally brushed off the significance of Peterson's evidentiary claims, and spends his remaining space explaining to the Court exactly why he believes this is so.

Though Judge Lynch was not incorrect to deny the petition on the merits rather than address the statute of limitations issue—particularly when that issue was not briefed at that time—it would be clear error for the Court to do so now. *See Ayala*, 829 F.3d at 1095.

The purpose of AEDPA's one-year statute of limitations is to place finite restrictions on a petitioner's claim in order to better ensure timely federal review and to promote judicial efficiency. *See Calderon v. United States Dist. Ct.*, 128 F.3d 1283, 1286 (9th Cir.1997), *cert. denied*, 522 U.S. 1099 (1998), *overruled on*

*other grounds by Calderon v. U.S. Dist. Court for Cent. Dist. of California*, 163 F.3d 530, 533 (9th Cir. 1998). Once a court determines that a claim is untimely, the matter is over. The Court does not also review the petition on the merits. Despite Peterson's well researched objections, the Court declines to address them individually.

**IV. Actual Innocence**

Finally, Peterson alleged in his response to the State's objections that he intended to raise an actual innocence claim and would do so in his own objections. (Doc. 46 at 2.) Yet his objections contain no apparent claim. Mindful of its duty to liberally construe pro se pleadings, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court will assume that Peterson intends his judicial bias claim to demonstrate his actual innocence.

A petitioner may overcome a procedural impediment to his claim by demonstrating actual innocence of the underlying crime. *Vosgien v. Persson*, 742 F.3d 1131, 1134 (9th Cir. 2014) (citing *Schlup v. Delo*, 513 U.S. 298, 320 (1995)). "A claim of actual innocence under *Schlup* is 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id.* To obtain relief, a petitioner must show that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a

reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 537 (2006). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

While a claim of judicial bias like the one alleged by Peterson is a procedural violation that undermines the fairness of the proceeding itself, *Hurles v. Ryan*, 752 F.3d 768, 788 (9th Cir. 2014), it does not actually indicate that he is innocent of anything. Peterson does not allege that the judge initiated the proceedings against him, simply that he failed to recuse himself in the face of an obvious conflict of interest. This "newly discovered evidence" does not tend to indicate that Peterson is factually innocent of the crimes of conviction and therefore cannot relieve him of AEDPA's time bar.

### V. Certificate of Appealability

The Court's analysis of the statute of limitations issue rests upon its assessment that a remand to correct a restitution figure does not result in a "new judgment." This is consistent with the decisions of several district courts. However, the Ninth Circuit has not addressed this issue. For this reason, the Court will grant Peterson a certificate of appealability to give the Ninth Circuit the opportunity to consider whether a court's remand to correct restitution is a "new judgment" for purposes of determining AEDPA's statute of limitations.

Having reviewed de novo and finding Peterson's petition to be untimely, the Court will now adopt the recommendation to dismiss Peterson's petition.

IT IS ORDERED that the Findings and Recommendation is ADOPTED in part and modified in part. The recommendation to dismiss Peterson's petition is ADOPTED.

1. Peterson's petition (Doc. 1) is DENIED.

2. The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability is GRANTED.

DATED this 29th day of October, 2019.

Dana L. Christensen, Chief Judge
United States District Court